# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES,

        Plaintiff,

vs.

THOMAS M. BIDEGARY,

        Defendant.

Case No. 3:17-CR-00073-RCJ-WGC
        3:20-CV-00063-RCJ

**ORDER**

Defendant timely moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of his retained counsel, Mr. Arrascada. Defendant also requests appointment of counsel. Thorough review of the record demonstrates conclusively that Defendant is not entitled to relief and the Court therefore denies the motion. The Court further declines to issue a certificate of appealability and instructs the Clerk of Court to enter a separate and final judgment in the related civil case. Finally, the Court denies as moot Defendant's motion requesting appointment of counsel.

## FACTUAL BACKGROUND

In 2017, Defendant was indicted on multiple counts for tax fraud and other statutory violations in two separate cases: No. 3:17-CR-00033-RCJ-WGC and No. 3:17-CR-00073-RCJ-

WGC. Case number 00033 contained sixteen total counts, of which thirteen applied either to Defendant alone or in conjunction with his co-defendant. Case number 00073 contained three counts, all of which applied to Defendant.

Following negotiations, Defendant entered a substantially similar guilty plea in each case. In those, he agreed to plead guilty to Count 1 of Case number 00033 (Conspiracy to Defraud the United States, 18 U.S.C. § 371) and Count 2 of Case number 00073 (Theft of Government Money, 18 U.S.C. § 641) as well as pay restitution to certain specified victims.[1] In exchange, the government agreed to drop all remaining charges and to not seek an upward departure from the Sentencing Guidelines recommendation despite Defendant's criminal history. This Court accepted Defendant's guilty plea and sentenced him to sixty months per count, to be served concurrently, to pay restitution in the amounts specified, and certain other special conditions not relevant here. (ECF Nos. 38–41.) Within the one-year statute of limitations, Defendant filed the instant motion. (ECF No. 42.)

**LEGAL STANDARD**

A prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" where the sentence is unconstitutional or unlawful, the court lacked "jurisdiction to impose such sentence," "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). This remedy is available only where the error is jurisdictional, constitutional, contains "a fundamental defect which inherently results in a complete miscarriage of justice," or includes "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). A

---

[1] Although Defendant's guilty pleas covered both cases, his Section 2255 motion objects only to the effectiveness of counsel in regard to the theft of government money charge. However, because of the global nature of the agreements, the Court also addresses the charges brought in the other case.

petitioner must prove, by a preponderance of the evidence, any grounds for vacating or modifying a sentence. *Johnson v. Zerbst*, 304 U.S. 458, 468–69 (1938).

A court should deny the motion if the case record "conclusively show[s] that the prisoner is entitled to no relief." § 2255(b). Otherwise, a court should grant a hearing to make the necessary findings of fact and conclusions of law to rule on the motion. *Id.*

Upon dismissal, a court should determine whether to issue a certificate of appealability. Rules Governing § 2255 Proceedings 11(a). A certificate is appropriate when the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## ANALYSIS

To prove a claim of ineffective assistance of counsel, a petitioner must show that his counsel's assistance was deficient, and this deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's performance is adequate; thus, counsel will be found deficient only when his "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690–91. For prejudice, a petitioner must prove a reasonable probability that the outcome would have been different. *Id.* at 694. The touchstone for prejudice in collateral attacks of plea agreements is whether the defendant would have insisted on going to trial but for his counsel's ineffective assistance. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To begin with, the Court notes that Mr. Arrascada was not appointed counsel—instead, Defendant had retained him. Therefore, at any point in the proceedings, Defendant could have simply fired Mr. Arrascada and either hired another attorney, proceeded *pro se*, or requested that the Court appoint counsel if Defendant met the qualifications for appointed counsel. The fact that

Defendant continued to retain (and presumably compensate) Mr. Arrascada weighs against allegations of ineffectiveness.[2] Nevertheless, given the constitutional necessity for effective counsel, the Court examines each claim in turn. Defendant claims counsel was ineffective regarding three separate instances: (1) the guilty plea, (2) sentencing, and (3) appeal.

### I.   *Guilty Plea Proceedings*

Defendant argues that counsel was uninterested in pursuing any defense in the case and that Defendant "was presented with a plea agreement and was made to feel that [he] had no choice but to sign it. Further, the details of its content were not reviewed, discussed, or explained to [him]." (ECF No. 42 at 4.) However, the potential for duress and lack of understanding are precisely why the Court engages in an extensive and detailed canvas with any defendant prior to accepting a guilty plea. Such occurred in the instant case at the change-of-plea hearing on June 18, 2018. (ECF No. 35.)

At the very beginning of the canvas, the Court was informed that Defendant had recently been diagnosed with a brain tumor. Concerns regarding Defendant's competence to enter into a guilty plea resulted in the following dialogue:[3]

Court: So I'm trying to avoid a 2255 petition.

Mr. Arrascada: As am I.

Court: So do I need to order a physician exam? Or how can we get over the problem?

Defendant: I'm saying that I'm competent enough to accept this plea agreement and plead guilty. It's just that I have future major medical problems that I have to take care of myself I guess, your Honor.

---

[2] Indeed, there was more time than usual to obtain new counsel and educate him on the facts of the case, because Defendant partially waived his speedy trial rights to allow a longer period between entering the guilty plea and sentencing so that he could receive necessary medical care.

[3] As there are currently no written transcripts in this case, all dialogue is obtained from the audio recordings of the hearings.

Even after that statement, the Court determined that the prudent path would be to fully canvas Defendant at the change-of-plea hearing, but defer making a finding on the issue of competency until the sentencing hearing, which was to be postponed until Defendant completed his medical evaluations and received a final diagnosis. The Court then continued with the canvas so that the guilty plea could be accepted, conditional on the final finding of competency:

> Court: Have you had ample opportunity to discuss your case with your attorney, sir, and are you satisfied to have him represent you?
>
> Defendant: Yes, your Honor.
>
> . . .
>
> Court: You've discussed with your attorney this charge, Count 1 of the superseding indictment?
>
> Defendant: Yes, your Honor.
>
> . . .
>
> Court: I am also required to explain to you the elements that make up the charge[s]. [The Court proceeds to explain the charges under 18 U.S.C. § 371 and 18 U.S.C. § 641, as well as the maximum punishments associated with each count.]
>
> . . .
>
> Court: Counsel, do you acknowledge—this is pursuant to agreement in both cases—do you acknowledge that you've passed on all negotiations or plea agreements to your client?
>
> Mr. Arrascada: I have, your Honor.
>
> Court: And you acknowledge that, Mr. Bidegary, that you have received all—through your attorney—all negotiations for plea and plea offers from the government?
>
> Defendant: Yes, your Honor.
>
> Court: And you're acting here today on the advice of your attorney?
>
> Defendant: Yes, your Honor.

///

Court: Ok. Now counsel said this is pursuant to agreement in both cases 33 and 73. Did you sign the agreements, sir?

Defendant: Yes, your Honor.

Court: That's your signature?

Defendant: Yes.

Court: And you read them before you signed them?

Defendant: Yes, your Honor.

Court: You discussed them with your attorney, and he answered all of your questions?

Defendant: Yes, your Honor.

Court: And do you believe you understand them, sir?

Defendant: Yes, your Honor.

Following this colloquy, the Court asked the government to read aloud the provisions and terms of the plea agreements. Afterwards, it continued its canvas, during which the Defendant affirmed that, among other things: (1) the terms read by the government reflected his understanding of the agreements; (2) Defendant had voluntarily signed the plea agreements; (3) Defendant and counsel had discussed the sentencing guidelines relevant to his case and counsel had answered all of Defendant's questions; (4) Defendant had read through the plea agreements with counsel; and (5) the statement of facts, as read by the Court from the plea agreements, were a correct and accurate account of the events leading to the charges. Consequently, even if Defendant's counsel had told him absolutely nothing about the plea agreements prior to the hearing, Defendant was more than sufficiently informed of his rights and the terms of the agreements, and had ample opportunity to object or ask for clarification—which he did not do.

Furthermore, this is not the first time that Defendant has been convicted of substantially similar offenses. In 1999, Defendant was found guilty by a jury on all counts, including a count

for violating 18 U.S.C. § 641. (PSR at 15.) Defendant also has several other previous felony convictions connected with tax-filing practices that involved fraud and deceit. Therefore, the Court does not find persuasive Defendant's argument that "I did not have any idea of the magnitude of the sentence that I would face . . . [and] did not even know what the charges against me were." (ECF No. 42 at 4.) In the face of Defendant's lack of objection at the hearing, the Court does not find it credible that Defendant's counsel was ineffective. Further, even if counsel was ineffective, Defendant was not prejudiced as the charges and agreements were explained to him in great detail, and the agreement resulted in the government dropping fourteen other charges which Defendant had been indicted on.

## II.     *Sentencing Proceedings*

Defendant next argues that counsel was ineffective in failing to object to various sentencing enhancements during the sentencing hearing. However, it is not clear which enhancements Defendant objects to. He discusses "relevant conduct" and "disputed sentencing factors," but does not elaborate. As to relevant conduct, the Court may, as Defendant was informed of at the change-of-plea hearing and in the plea agreements, consider wrongful conduct related to the underlying charges, but for which charges were not pursued, in determining whether to depart from the sentencing recommendations of the plea agreement or the Sentencing Guidelines. Yet, in the instant case, no such departure occurred; therefore, it is unclear how "relevant conduct" is material.[4] Nor are there any "disputed sentencing factors" identified for the Court—either during the hearing or in the instant motion. Nonetheless, the Court reviews the record of the hearing for any instance of ineffective assistance of counsel in accordance with Section 2255's dictates.

///

---

[4] In fact, the Court rejected the upward departure to ninety-six months recommended by probation in the PSR.

After accepting the guilty plea,[5] the Court asked Defendant whether he had any objections to the PSR, which he did not. Additionally, the Court had a representative from the probation office read out the charges and enhancements, as well as the justifications for each. Following this, the government and Mr. Arrascada were given the opportunity to address the 28 U.S.C. § 3553 sentencing factors, and Defendant was provided the opportunity to address the Court directly.[6] Consequently, Defendant's contention that "I was never given an opportunity to be heard," (ECF No. 42 at 5), is categorically untrue. Quite the opposite, Defendant stated during his dialogue that he "hold[s] himself responsible for everything that happened."

Furthermore, assuming, *arguendo*, that counsel was ineffective, Defendant has failed to demonstrate prejudice for the same reasons discussed above in the context of his guilty plea. Simply put, Defendant's counsel negotiated a plea agreement which resulted in Defendant pleading guilty to two out of the original sixteen charges brought against him. This reduction more than accounts for any impropriety in the sentencing enhancements.

Finally, Defendant argues that counsel was ineffective in failing to request Defendant's time served be credited against his sentence. However, the Court does not order or implement such credit. Instead, the credit is statutorily mandated by 18 U.S.C. § 3585(b) and is implemented by the Bureau of Prisons. 18 U.S.C. §§ 3586, 3621. Accordingly, the Court finds neither ineffectiveness on the part of counsel nor prejudice to Defendant in regard to sentencing.

### III. *Appeal*

Defendant's final argument is that counsel was ineffective in failing to properly consult with him regarding the procedure for appeal. Although it is likely the "better practice . . . for

---

[5] Although the Court did not explicitly address the issue, acceptance of Defendant's guilty plea came after thorough review of the record and additional filings, and implicitly constituted a finding that Defendant was competent to enter a guilty plea.

[6] The Court also read and considered the letters submitted by Defendant and his daughter in the supplement to the sentencing memorandum.

counsel to routinely consult with the defendant regarding the possibility of appeal[,]" it is not required in every instance. *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000). Instead, counsel has a constitutional responsibility to consult with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Here, the Court does not find either ground to be applicable.

First, as to Defendant's knowledge of the possibility of appeal, he is incorrect that "the plea agreement[s] contained no such appeal-waiver provision." (ECF No. 42 at 8.) Rather, both plea agreements expressly contain waivers of all grounds for appeal or collateral challenge, except for non-waivable claims of ineffective assistance of counsel and claims available if the Court were to apply a sentence constituting an upward variance or departure from the Sentencing Guidelines. (*See, e.g.*, ECF No. 32 at 11:21–12:12.) As there was no upward departure, the only remaining ground for appeal or collateral challenge would be ineffective assistance of counsel and, as described above, Defendant has not indicated displeasure with counsel's performance anywhere in the record until this motion. Furthermore, even if counsel failed to explain the procedures for appeal, the Court did so at the sentencing hearing—describing all applicable deadlines, the right to appointed counsel, and how to file an appeal. Finally, the quality of Defendant's plea agreement, pleading guilty to two charges in return for the government dropping sixteen, weighs very heavily against a finding that any "rational defendant" would want to appeal. Accordingly, the Court finds neither ineffectiveness on the part of counsel nor prejudice to Defendant in regard to the possibility of an appeal.

### IV.     *Certificate of Appealability*

As the Court denies the petition, it must determine whether to issue a certificate of appealability. Rules Governing § 2255 Proceedings 11(a). The Court finds that Defendant has not

made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor does the Court believe its findings would be amenable to debate by a reasonable jurist. *Slack*, 529 U.S. at 484. Accordingly, the Court declines to issue a certificate of appealability.

### V. Motion Requesting Appointment of Counsel

Defendant also requested this Court appoint counsel. Because the Court denies Defendant's § 2255 counsel, it denies that request as moot.

### CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 42) is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that the Clerk shall ENTER a separate and final judgment under Federal Rule of Civil Procedure 58(a) as directed by *Kingsbury v. United States*, 900 F.3d 1147 (9th Cir. 2018).

IT IS FURTHER ORDERED that Defendant's Motion for Appointment of Counsel (ECF No. 43) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated July 8, 2020.

_____
ROBERT C. JONES
United States District Judge